**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:21-cv-4882 |
| | : |
| v. | : |
| | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| AT HOME GROUP, INC., STEVE | : **SECTIONS 14(a) AND 20(a) OF THE** |
| BARBARICK, WENDY A. BECK, PAULA | : **SECURITIES EXCHANGE ACT OF** |
| BENNETT, LEWIS L. BIRD III, JOHN | : **1934** |
| BUTCHER, ELISABETH B. CHARLES, | : |
| JOANNE C. CREVOISERAT, PHILIP L. | : **JURY TRIAL DEMANDED** |
| FRANCIS, KENNETH SIMRIL, and LARRY | : |
| D. STONE, | : |
| | : |
| Defendants. | |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against At Home Group, Inc. ("At Home or the "Company") and the members At Home board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of At Home by Hellman & Friedman LLC ("Hellman & Friedman") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on June 2, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Ambience Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Ambience Parent, Inc. ("Parent"), will merge with and into At Home with At Home surviving the merger and becoming an affiliate of Hellman & Friedman (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each At Home common share issued and outstanding will be converted into the right to receive $36.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked At Home stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to At Home stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because At Home is traded on the New York Stock Exchange, which is headquartered in this District. In addition, At Home's proxy solicitor, MacKenzie Partners, is headquartered in this District, as well as the Company's legal advisor. The closing of the Proposed Transaction will also take place in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of At Home common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Steve Barbarick has served as a member of the Board since July 2018.

11. Individual Defendant Wendy A. Beck has served as a member of the Board since September 2014.

12. Individual Defendant Paula Bennett has served as a member of the Board since July 2018.

13. Individual Defendant Lewis L. Bird III has served as a member of the Board since April 2017 and is also the President and Chief Executive Officer of the Company .

14. Individual Defendant John Butcher has served as a member of the Board since February 2020.

15. Individual Defendant Elisabeth B. Charles has served as a member of the Board since December 2016.

16. Individual Defendant Joanne C. Crevoiserat has served as a member of the Board since Januiary 2019.

17. Individual Defendant Philip L. Francis has served as a member of the Board since May 2015.

18. Individual Defendant Kenneth Simril has served as a member of the Board since November 2020.

19. Individual Defendant Larry D. Stone has served as a member of the Board since December 2014.

20. Defendant At Home is incorporated in Delaware and maintains its principal offices at 1600 East Plano Parkway, Plano, Texas 75074.  The Company's common stock trades on the New York Stock Exchange under the symbol "HOME."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.  **The Proposed Transaction**

23.   At Home Group Inc. operates home decor superstores in the United States. The company's stores offer home furnishings, including accent furniture, furniture, mirrors, patio cushions, rugs, and wall art; and accent décor, such as artificial flowers and trees, bath, bedding, candles, garden and outdoor decors, holiday accessories, home organization, pillows, pottery, vases, and window treatments. As of April 21, 2021, it operated approximately 226 stores. The Company was founded in 1979 and is headquartered in Plano, Texas.

24.   On May 6, 2021, At Home announced that it had entered into a proposed transaction:

> PLANO, Texas--(BUSINESS WIRE)--At Home Group Inc. (NYSE: HOME), the home décor superstore, today announced that it has entered into a definitive agreement to be acquired by funds affiliated with Hellman & Friedman (H&F), a premier global private equity firm, in an all-cash transaction valued at $2.8 billion, including the assumption of debt.
>
> Under the terms of the agreement, At Home stockholders will receive $36.00 per share in cash, which represents a premium of approximately 17% to the Company's closing stock price of $30.67 on May 4, 2021, the last trading day prior to media speculation regarding a possible transaction, and a premium of approximately 25% to the 30-day volume weighted average share price.
>
> Phil Francis, At Home's Lead Independent Director and Chair of the Special Committee of the Board of Directors, said, "After a thorough evaluation and diligent and thoughtful deliberations in consultation with our independent advisors, we are pleased to reach this agreement, which provides stockholders with immediate and substantial value for their investment. The Special Committee and the Board considered the current state of the business, its outlook and opportunities, and believe this transaction is the optimal path forward and in the best interest of our stockholders."
>
> Lee Bird, Chairman and Chief Executive Officer of At Home, said, "As we enter the next chapter for our company, H&F is the ideal

partner to advance our At Home 2.0 long term strategy. Together with H&F, we will have the resources and flexibility to provide our customers with a differentiated experience that meets their evolving needs. This transaction is a testament to the achievements of our team members, and I would like to thank each of them for all they do each day to contribute to the success of At Home."

Erik Ragatz, Partner at H&F, said, "As the leading value retailer of home décor offering unmatched breadth and depth of product assortment at everyday low prices, At Home is well positioned to continue its long track record of store expansion and growth. At Home's differentiated, low-cost operating model is disruptive to the traditional home channels and provides a strong opportunity for market share gain. This acquisition is consistent with Hellman & Friedman's strategy to invest in market-leading businesses with substantial runway for growth, and we are looking forward to partnering with At Home's talented management team to help capture the significant market opportunity in front of the Company."

**Approvals and Timing**

The transaction was negotiated on behalf of At Home by a Special Committee of its Board of Directors composed entirely of independent directors with the assistance of independent financial and legal advisors. Following the Special Committee's unanimous recommendation, At Home's Board of Directors unanimously approved the merger agreement and has recommended that At Home's stockholders adopt and approve the merger agreement and the transaction.

The transaction is expected to close in the third quarter of calendar year 2021, subject to the satisfaction of customary closing conditions, including the approval of At Home's stockholders and expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. The transaction is not subject to a financing condition. Upon completion of the transaction, At Home will become a privately-held company and At Home's shares will no longer trade on The New York Stock Exchange.

Under the terms of the agreement, At Home may solicit alternative acquisition proposals from third parties during a 40-day "go-shop" period following the date of execution of the merger agreement. There can be no assurances that the "go-shop" will result in a superior proposal. At Home does not intend to disclose developments related to the solicitation process until it determines

> whether such disclosure is appropriate or is otherwise required. The agreement provides H&F with a customary right to match any superior proposal.
>
> **Advisors**
>
> Goldman Sachs & Co. LLC is serving as exclusive financial advisor and Fried, Frank, Harris, Shriver & Jacobson LLP as legal counsel to the Special Committee. Guggenheim Securities, LLC is serving as financial advisor and Simpson Thacher & Bartlett LLP as legal counsel to Hellman & Friedman.

\* \* \*

25.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that At Home's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

26.     On June 2, 2021, At Home filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning At Home Financial Projections*

27. The Proxy Statement fails to provide material information concerning financial projections by At Home management and relied upon by Goldman Sachs in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that At Home management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the February 2021 Management Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Gross Profit, Operating Income; and Adjusted EBITDA, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29. For the April 2021 Management Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Gross Profit, Operating Income; Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their

8

most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

32. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs's Financial Analysis*

33.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the range of illustrative terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetual growth rates of 2.0% to 3.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.00% to 11.00%, (iv) the ranges of illustrative enterprise values for the Company; (v) the net debt of the Company as of January 31, 2021; and (vi) the number of fully diluted outstanding shares of the Company's common stock.

34.     With respect to Goldman Sachs' *Illustrative Present Value of the Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the basis for applying enterprise value to future next twelve months Adjusted EBITDA multiples of 6.0x to 9.0x to forward Adjusted EBITDA estimates; (ii) the forecasted net debt of the Company for each of the fiscal years 2022 to 2024; (iii) the basis for using an illustrative discount rate of 10.7%; and (iv) the Company's cost of equity.

35.     With respect to Goldman Sachs' *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the all-cash acquisition transactions observed by Goldman Sachs in the analysis; (ii) the premiums paid for those transactions; (iii) closing dates of the transactions observed; and (iv) the enterprise values for the transactions.

36.     With respect to Goldman Sachs's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the closing dates of the transactions selected by Goldman Sachs in the analysis; and (ii) the total consideration paid in each transaction.

37.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Goldman Sachs and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

11

to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

43. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of At Home within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

directors of At Home, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of At Home, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of At Home, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: June 2, 2021                                    **MELWANI & CHAN LLP**

                                                        By:   /s *Gloria Kui Melwani*
                                                             Gloria Kui Melwani (GM5661)
                                                             1180 Avenue of the Americas, 8th Fl.
                                                             New York, NY 10036
                                                             Telephone: (212) 382-4620
                                                             Email: gloria@melwanichan.com

                                                             *Attorneys for Plaintiff*